# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

MATTHEW SAVORY, Register No. 503817, )
                 Plaintiff, )
                 v. ) No. 06-4203-CV-C-SOW
TERRY MOORE, et al., )
                 Defendants. )

## REPORT AND RECOMMENDATION

On May 19, 2008, defendants Bax, Dormire, Ellison, Long, Moore, Byron Wood, Arthur Wood, and Volkart filed a motion for summary judgment on plaintiff Savory's claims against them. Plaintiff filed suggestion in opposition on July 31, 2008.[1]

Defendants argue in support of granting summary judgment that: (1) plaintiff's assignment to Special Security Order (SSO) status did not violate the Eighth Amendment; (2) plaintiff's assignment to SSO status for ten days was not an atypical deprivation and did not violate due process; (3) defendant Volkart should be dismissed because his involvement was limited to writing the Rule 1 conduct violation report; (4) defendant Ellison did not violate plaintiff's right to due process by denying his request to call unspecified Phase III offenders as witnesses at his disciplinary hearing; (5) defendant Ellison did not violate plaintiff's right to due process by denying his request to review videotape at the conduct violation hearing which defendant Ellison had reviewed prior to the hearing; and (6) defendants are entitled to judgment as a matter of law as to Count VI of plaintiff's complaint because he was not prevented from filing grievances and has no constitutional right to file repetitive grievances.

---

[1]This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

In his opposition to summary judgment, plaintiff asserts

> (1) Plaintiff was confined in administrative segregation under extreme, cruel and harsh conditions; (2) Plaintiff was completely stripped of his necessities: clothing, bedding, mattress, etc. in the middle of winter 2004, having to sleep on a concrete floor for numerous days; (3) Plaintiff was denied food, water and medical attention while in administrative segregation; (4) Plaintiff was denied the opportunity to call witnesses, specifically Tommy Dunmore and Paul Clark on his behalf during the disciplinary proceeding; (5) Plaintiff was denied the right to present documentary evidence, namely the videotape to prove his innocence; (6) Plaintiff was denied the right to petition for redress of grievance when he was told to 'refrain from any further filing'; (7) Defendants failed to provide a disciplinary report within a reasonable amount of time; (8) as a direct result of Plaintiff Savory's cruel and harsh treatment, he suffered severe physical injury, mental and emotional distress; (9) Defendants do not have the defense of qualified immunity; and (10) Plaintiff denies any involvement in the assault and murder of Jack Webb.

Defendants filed a reply to plaintiff's suggestions on August 11, 2008.

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988). Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

**Statement of Facts**

On Friday, December 10, 2004, at approximately 4:30 p.m., inmate Jack Webb was stabbed and mortally wounded in Dining Room 3 at the Jefferson City Correctional Center (hereinafter "JCCC"). Prior to December 10, 2004, plaintiff Savory was in Phase III administrative segregation. Phase III offenders ate their meals in groups in the PCU dining area, as opposed to their cells. Plaintiff admits to blood on his clothing following the stabbing, and there was blood on his face. Plaintiff was in Dining Room 3 when Jack Webb was stabbed. The Cole County Sheriff's Department and the Department of Corrections investigated Jack Webb's murder.

At approximately 4:49 pm, based on the pending investigation of the murder of Jack Webb, of which plaintiff was a possible suspect, and corresponding security concerns, Sergeant Hovis and another corrections officer escorted plaintiff from the Dining Room 3 exit door to Housing Unit 8, where plaintiff was strip searched and placed on SSO status.

Inmates are placed on SSO status for any threatening action, staff assault, or reasonable documented cause to believe the offender will harm staff if given the opportunity. All SSO status inmates are initially placed on strip-cell status. Strip-cell status initially only provides the inmate with a paper gown to wear, and his property, such as a mattress, other clothing, bedding and other property, is returned as soon as improved behavior allows.

On December 11, 2004, while on SSO status, plaintiff was given a jumpsuit to wear at 12:15 a.m., after the investigator swabbed plaintiff's face for blood. However, at 7:50 a.m., as is initially required for SSO status inmates, plaintiff's shower shoes and jumpsuit were removed and plaintiff was given a paper gown to wear. While on SSO status, plaintiff received three meals a day. On December 15, 2004, plaintiff was given his mattress. On December 16, 2004, plaintiff had a classification hearing, and was given an orange jumpsuit to wear to the hearing. On December 17, 2004, plaintiff received a toothbrush, toothpaste, a pillow, a pillowcase, sheets and a blanket. After ten days in SSO status, on December 20, 2004, plaintiff was removed from SSO status and all his property was returned to him.

At plaintiff's December 16, 2004 classification hearing, it was determined that he should be placed in Housing Unit 8 pending investigation of the death of inmate Jack Webb, and that plaintiff's classification status be reviewed again in thirty days. An additional classification hearing was scheduled on January 13, 2005, and it was noted that plaintiff refused to attend. It was recommended that plaintiff continue to reside in administrative segregation Housing Unit 8 during the pending murder investigation. Plaintiff was scheduled for a 90-day review of his classification. On April 7, 2005, plaintiff again had a classification hearing, which he attended. Plaintiff told the committee he was not involved in the murder. It was recommended that plaintiff remain in administrative segregation pending completion of the murder investigation, with a review to be scheduled in ninety days. On June 30, 2005, another classification hearing was held where it was noted that the investigator's office states plaintiff is still under investigation, and it was recommended that he continue to be held in administrative segregation, with a 90-day review. At plaintiff's classification hearing on September 22, 2005, it was noted that on August 30, 2005, he was found guilty of a Rule 1 murder/manslaughter conduct violation. Plaintiff continued to be held in administrative segregation, with a 90-day review.

On August 30, 2005, a conduct violation report was entered against plaintiff. The report states it relied on the following evidence: the conduct violation report indicating that offender Jack Webb was assaulted in JCCC dining room 3 resulting in his death, and the confidential murder investigation report that identified plaintiff as the assailant. The conduct violation report also noted plaintiff's request that the videotape be reviewed[2], and noted

---

[2]It appears that the videotape plaintiff was requesting be reviewed had already been reviewed as part of the investigative report. On plaintiff's August 30, 2005 request-for-witness form, it was noted that in addition to all witnesses, all relevant documents and materials had been processed as a part of the investigative report. Further, the evidence shows Jerry Ellis, the presiding officer at the hearing, reviewed the tape prior to the hearing.

The staff findings/response to plaintiff's September 29, 2005 Informal Resolution Request, grievance No. 503817, also support that the videotape was reviewed prior to the hearing. The grievance response states that it was the hearing officer, Jerry Ellison's, "judgment . . . that ample evidence was presented in the investigative report which would render another review of the video unnecessary."

plaintiff requested no witnesses at the hearing and that his request submitted prior to the hearing was previously addressed (and denied as an invalid request).[3] Based on the evidence, Functional Unit Manager Jerry Ellison, and Arthur Wood, the Associate Superintendent, found plaintiff guilty of a Rule 1 conduct violation for murder/manslaughter. Wood recommended thirty days disciplinary segregation (with a credit for time already served), and referral to administrative segregation for possible continuation of administrative segregation, and referral for possible prosecution. Superintendent Dave Dormire approved the report.

On December 7, 2005, an administrative segregation committee submitted an extension request. The request stated plaintiff had been assigned to administrative segregation at JCCC since December 16, 2004, as result of a Rule 1 conduct violation, which took place at JCCC, and requested an extension of administrative segregation because of the conduct violation.

On December 22, 2005, a classification hearing was held and plaintiff's assignment to administrative segregation was continued with 90-day reviews.

Plaintiff filed grievances challenging the Rule 1 conduct violation. In grievance No. JCCC 05-3422, plaintiff challenged his not being allowed to call his requested witnesses, alleged denial of due process, and requested that his conduct violation be expunged and he be released from administrative segregation. Pursuant to plaintiff's appeal of the denial of his grievance, two responses were provided to plaintiff, one from the Assistant Division Director of Adult Institutions addressing the calling of witnesses, and another Superintendent's Response addressing plaintiff's allegations of denial of due process, including denial of witnesses and plaintiff's request that the videotape of the assault of Jack Webb be played at his conduct violation hearing.

The response from the Assistant Division Director cited a formal investigation that was conducted by investigative staff into the murder of Jack Webb, and noted that when

---

[3]Plaintiff's witness request form he filled out on August 29, 2005, was considered and denied because he indicated his request for witnesses to be "HU 3 Phase Three Inmates" and "HU 6 Phase Three inmates," and he could not name specific witnesses. Plaintiff's request for all Phase Three inmates in Housing Units 3 and 6 to be witnesses was determined to be an invalid request. It was further notes that all relevant witnesses had been interviewed through the process of the investigation into the murder of Jack Webb.

5

interviewed, plaintiff had requested all Phase III inmates in Housings Units 3 and 6 as his witnesses. The Assistant Director's response advised plaintiff that his request for witnesses had been considered and denied because he did not provide names of specific witnesses to be contacted, but instead listed all Phase III offenders. The response further noted that relevant witnesses were interviewed during the investigative process. The response stated plaintiff was found guilty on sufficient evidence and that his violation shall stand.

The Superintendent's Response cited plaintiff's invalid witness request for all Phase III inmates, and failure to provide the names of specific witnesses to be called. The response further stated that the hearing officer's decision not to review the videotape at the hearing was within guidelines of procedure. The response cited plaintiff's lack of any evidence to support that he was wrongfully found guilty of the Rule 1 conduct violation, and found plaintiff had received due process.

Plaintiff filed an additional grievance, No. JCCC 05-3423, regarding not being allowed to view the videotape at the hearing. The grievance appeal response and Superintendent's Response on this grievance cited the issue had already been addressed in No. 05-3422, that it would not be addressed again, and that plaintiff refrain from any further filing in the matter.

## Discussion

*Eighth Amendment Claims - SSO Status*

Plaintiff's allegations are that his ten-day assignment to SSO status and subsequent continued administrative segregation assignment violated his Eighth Amendment rights because the conditions constituted cruel and unusual punishment. In response to defendants' summary judgment motion, plaintiff states that when he was placed on SSO status, it was the middle of winter and he was denied life necessities such as clothing, food and water, a mattress, and medical attention.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Under the Eighth Amendment, officials must ensure that prisoners are afforded "humane conditions of confinement," such as "adequate food, clothing, shelter, and medical care," and "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994)

6

(quotation omitted). Establishing an Eighth Amendment conditions-of-confinement claim requires a showing of two requirements. "First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . ." Id., 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)); and "[s]econd, a prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. at 834). Therefore, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. To violate the Cruel and Unusual Punishment Clause, prison officials must have a sufficiently culpable state of mind. Id. In a prison conditions case, the state of mind is one of "deliberate indifference" to inmate health and safety. Id. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "[O]nly a wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834.

     In the instant case, clearly the conditions of plaintiff's ten-day assignment to SSO were not comfortable; however, plaintiff has failed to come forward with evidence that such conditions constituted cruel and unusual punishment or that there was a serious risk of harm to which defendants were deliberately indifferent. First, the court notes that plaintiff has failed to come forward with any evidence, or even specific allegations, as to his alleged denial of food and water while on SSO status. Plaintiff cannot create a question of fact, by broadly, unspecifically asserting that he was denied food and water, especially in the face of evidence by defendants that JCCC policy provides for SSO inmates to be given three meals a day.

     Second, although the evidence shows that plaintiff was put on SSO status on December 11, 2004, and did not receive his mattress until December 15, his clothing on December 16, and his toothbrush, toothpaste, a pillow, a pillowcase, sheets and a blanket on December 17, before being removed from SSO status on December 20, 2004, plaintiff has failed to come forward with evidence that such conditions for the limited period of less than one week

7

constituted cruel and unusual punishment. Conditions are not cruel and unusual merely because they are harsh or uncomfortable. Farmer v. Brennan, 511 U.S. at 832. There is no evidence from which a reasonable jury could support plaintiff's assertions that he was not given food, water, shelter or medical attention while on SSO status. Rather, the evidence supports that plaintiff was given three meals a day, was sheltered from the winter elements inside his cell, and suffered no injuries, and his health was not impaired in any way. The Eighth Circuit has held in a case with substantially similar facts that the mere fact that an inmate is confined in a strip cell is not unconstitutional. In Williams v. Delo, 49 F.3d 442 (8th Cir. 1995), the Court held the constitutional rights of an inmate were not violated when he was put in a strip cell for four days without clothing, bedding, running water or toiletries for assaulting his wife at visitation. The Court held the inmate was given the minimal civilized measure of life's necessities of three meals a day, including liquid nourishment in the form of milk, and was sheltered from the elements. Id. Thus, although plaintiff in this case was without his property, such as clothing, a mattress and toiletries, there is no evidence from which a reasonable jury could find that such conditions, for a period of less than one week, constituted denial of "minimal civilized measure of life's necessities," in violation of plaintiff's constitutional rights.

Because there is no evidence to support an excessive risk of serious harm to plaintiff while in SSO status, there is also no evidence to support the second prong of an Eighth Amendment claim. There is no evidence from which a reasonable jury could find that defendants were deliberately indifferent to an excessive risk to plaintiff's health or safety.

*Eighth Amendment Claims - Administrative Segregation*

Plaintiff alleges that upon his release from SSO status on December 20, 2004, he has remained confined to administrative segregation, in violation of his Eighth Amendment rights. Plaintiff's claims that his continued administrative segregation violates his Eighth Amendment rights because he is denied the privileges of general population inmates are not supported by the evidence. Denial of general population privileges fails to allege denial of basic life necessities or that there is a risk of serious harm to plaintiff's safety or health. There is no

8

evidence from which a reasonable jury could find that plaintiff's assignment to administrative segregation violates his Eighth Amendment rights.

*Fourteenth Amendment Due Process Claim*

Plaintiff alleges that his due process rights were violated when he was issued a Rule 1 conduct violation for murder/manslaughter because he was denied the opportunity to call witnesses at his conduct violation hearing, was denied the right to present the videotape at his conduct violation hearing to prove his innocence, was denied the right to petition for redress of grievances regarding his conduct violation when he was told to refrain from any further filing, and his conduct violation was not issued within a reasonable time after the murder.

Plaintiff does not have a right to due process under the Fourteenth Amendment unless he has a protected life, liberty or property interest. A liberty interest may arise from the Constitution itself or from state laws. Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

The Constitution itself does not give rise to a liberty interest in a prisoner avoiding transfer to more adverse conditions of confinement. Id. However, a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin v. Conner, 515 U.S. 472 (1995). The Supreme Court has held that states may, under certain circumstances, create liberty interests which are protected by the Due Process Clause, but these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless, imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Wilkinson v. Austin, 545 U.S. at 222-23.

*Due Process - SSO Status*

In the instant case, plaintiff argues that the conditions of his ten-day SSO status imposed an atypical and significant hardship in relation to the ordinary incidents or prison life.

The conditions imposed for plaintiff, as a SSO-status inmate, at least initially, requiring all property, including his clothing (his being given only a paper gown to wear), bedding and hygiene products being removed from his cell and possession, are conditions which arguably constitute an atypical and significant hardship in relation to ordinary incidents of prison life.

However, plaintiff was only exposed to these conditions for a few days.  Plaintiff received his clothing within five days; and toothbrush, toothpaste, pillow, pillowcase, sheets and blanket within seven days.  Plaintiff was only confined to SSO status for a total of ten days, during which time the evidence shows he was sheltered inside the prison from the winter weather, and received three meals a day.  Exposure to harsh prison conditions may not be so atypical as to create a liberty interest when such conditions are in effect for a short duration and are for investigative, administrative or safety reasons.  See Townsend v. Fuchs, 522 F.3d 765 (7th Cir. 2008) (conditions of temporary lockup, even though harsh because prisoner was forced to double cell in a very small cell and sleep on the floor with a wet moldy mattress failed to establish a liberty interest protected by due process because, unlike the conditions in Wilkinson v. Austin, 545 U.S. 209 (2005), where such conditions were indefinite and plaintiff was disqualified from parole consideration, his assignment was only temporary and he was released after 59 days; however, prisoner could still have a remedy under the Eighth Amendment for such harsh conditions).  Cf. Wilkinson v. Austin, 545 U.S. 209 (2005) (where exposure to harsh conditions of supermax prison were indefinite, and disqualified inmate for parole consideration, such conditions deemed atypical and significantly harsh in relation to ordinary incidents of prison life, thereby creating a liberty interest protected by due process).  Thus, in the instant case, this court finds plaintiff's assignment for ten days to SSO status did not create a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

However, even if this court were to find that the conditions of SSO status were atypical and significant and created a liberty interest, the facts show that within approximately five days of being put on SSO status for investigative and security purposes related to the murder of another inmate, of which plaintiff was a suspect, plaintiff was afforded a classification hearing. Plaintiff appeared in person at the classification review hearing.  Within five days of the classification review hearing, plaintiff was taken off SSO status.

"The State's first obligation must be to ensure the safety of guards and prison personnel, the public and the prisoners themselves."  Wilkinson v. Austin, 545 U.S. at 227. Thus, under the circumstances in the instant case, where the state's interest implicates the security of other inmates and prison personnel, the procedural process due must consider these

10

issues. In the instant case, although plaintiff had to wait five days prior to being given procedural process regarding his assignment to SSO status, the evidence is that plaintiff was a suspect in a murder that had just occurred, based on a number of factors including the blood on plaintiff's shirt and face, and his being in the area at the time of the incident. No reasonable jury could find that a classification review hearing within five days of being put on SSO status for investigative and security concerns related to the murder of another inmate, at which plaintiff was present, constituted insufficient procedural due process for plaintiff's ten-day SSO status assignment.

*Due Process - Issuance of Rule 1 Conduct Violation*

On August 30, 2005, plaintiff was issued a Rule 1 conduct violation for manslaughter/murder. Plaintiff states he received insufficient process during the hearing which resulted in the issuance of the conduct violation. Plaintiff alleges he was denied his requested witness for the hearing and an opportunity to have the relevant videotape reviewed at the hearing.

As set forth above, to establish a Fourteenth Amendment due process violation, plaintiff must first demonstrate that he was deprived of life, liberty or property by governmental action. Plaintiff does not allege that he was deprived of life or property; therefore, he must identify a liberty interest in order to sustain his due process claim as to the issuance of the Rule 1 conduct violation against him. Phillips v. Norris, 320 F.3d 844, 847 (2003). The Supreme Court in Sandin found the test for determining liberty interests in a prison setting to be whether the conditions of confinement impose an atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life. Id. There is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations. Id. (citing Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996)). Rather, any liberty interest a prisoner has must be in the nature of his confinement, and not in the procedures used to determine his confinement. Id. Thus, plaintiff's allegations that he was issued a false conduct violation because defendants failed to follow prison policy and procedure, when they denied him the opportunity to call witnesses and denied him the

11

right to have the videotape reviewed at his hearing, fail to identify a liberty interest protected by Fourteenth Amendment due process.

Further, plaintiff's resulting assignment to administrative segregation fails to identify a liberty interest protected by due process. The Eighth Circuit has consistently held that administrative and disciplinary segregation do not constitute in themselves, atypical and significant hardships in relation to ordinary incidents of prison life that would trigger the due process required by the Fourteenth Amendment, as described in Sandin. Portley-El. v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002).

Finally, although plaintiff had no liberty interest protected by due process, the court notes for the record that he was given due process. The evidence shows plaintiff's request for witnesses was denied because he failed to identify any specific witnesses, but rather requested generally as witnesses all Phase III offenders. Despite plaintiff's specific naming of witnesses Tommy Dunmore and Paul Clark in his response to summary judgment, he failed to identify these witnesses or request these persons as witnesses on the witness request form or at the time of this hearing in 2005. A general request for every Phase III offender was an invalid witness request. Further, the evidence supports that although the videotape of the stabbing of Jack Webb was not viewed at plaintiff's hearing on the Rule 1 conduct violation, it was viewed prior to the hearing by the presiding officer of the hearing, Jerry Ellis, and was reviewed in preparation of the confidential investigative report for purposes of the hearing and determining whether to issue the Rule 1 conduct violation.

Plaintiff has failed to come forward with evidence from which a reasonable jury could find that his constitutional due process rights were violated when he was issued the Rule 1 conduct violation and assigned to administrative segregation.

*Denial of Right of Redress to File Grievances*

Plaintiff states he was denied his right of access to the prison's administrative remedy procedure. Grievance procedures do not, in and of themselves, create a liberty interest in access to the procedure. The fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). A prison grievance procedure is a procedural right only; it

12

does not confer any substantive right upon the inmates, and therefore, does not give rise to a liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment. Id.  A failure to file grievances, without more, is not actionable under 42 U.S.C. § 1983.  Id.

Further, in the instant case, the evidence shows that grievance No. JCCC 05-3423 of which plaintiff states he was told to "refrain from further filing," was a duplicate grievance to issues complained and addressed in grievance No. JCCC 05-3422.  Plaintiff was told to refrain from further filing because the issues had already been addressed.

There is no evidence from which a reasonable jury could find that plaintiff's constitutional rights were violated because he was told to "refrain from further filing" on the issues filed in his duplicative grievance No. JCCC 05-3423.

## Conclusion

There is no evidence from which a reasonable jury could find that plaintiff's constitutional rights were violated by defendants.

IT IS THEREFORE, RECOMMENDED that defendants' motion for summary judgment be granted and plaintiff's claims be dismissed.  [45]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days.  The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report.  Exceptions should not include matters outside of the report and recommendation.  Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation.  The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances.  Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal.  See L.R. 74.1(a)(2).

Dated this 22nd day of December, 2008, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge